## TURNEY v. GOLDBERG'S LOAN OFFICE.

No. 18206. Opinion Filed June 12, 1928.

Rehearing Denied Feb. 12, 1929.

J. A. Denny, for plaintiff in error.

Samuel A. Boorstin and J. D. Johnston, for defendant in error.

LESTER, J. The parties on appeal appear here as in the lower court.

The plaintiff brought suit in replevin for the possession of certain personal property that had been delivered to the defendant in consideration of a loan by defendant to plaintiff.

The case was tried to the court and jury, and after both sides had completed their testimony, the court took the case from the jury and rendered its judgment in favor of the defendant, from which judgment the plaintiff prosecutes this appeal.

The plaintiff, through her agent, on the 22nd day of November, 1923, borrowed $300 from the defendant corporation, which corporation was engaged in loaning money on personal property delivered and pledged as a security for loans, said business being commonly denominated as pawnbrokerage.

A memorandum contract was entered into whereby the plaintiff was obligated within 30 days from date of the loan to pay the defendant the sum of $315. At the end of 30 days the plaintiff paid the defendant the sum of $15 and continued thereafter to make payments thereon until she had paid the defendant the total sum of $385; the last payment being made on the 20th day of November, 1925.

The defendant does not dispute the amount the plaintiff claimed to have paid on said loan.

From an examination of the briefs filed by the parties in this court, it appears that the defendant relies in part for its defense on section 1951, C. O. S. 1921, which reads as follows:

"Any person who carries on the business of a pawnbroker, by receiving goods in pledge for loans at any rate of interest above that allowed by law, except by authority of a license from a municipal corporation empowered to grant licenses to pawnbrokers, is guilty of a misdemeanor."

The defendant had secured from the city of Tulsa a license to do business as a pawnbroker.

The Constitution of this state clearly inhibits the Legislature from authorizing anyone to charge a greater rate of interest than 10 per cent. Article 14, section 2 of the Constitution, provided:

"The legal rate of interest shall not exceed 6 per centum per annum, in the absence of any contract as to the rate of interest, and, by contract, parties may agree upon any rate not to exceed 10 per centum per annum, and, until reduced by the Legislature, said rates of 6 and 10 per centum shall be, respectively, the legal and the maximum contract rates of interest."

Article 5, sec. 46, paragraph R, also prohibits the Legislature from passing any local or special law fixing the rate of interest.

The defendant contends that, although the plaintiff had paid the sum of $385 on said loan between the 22nd day of November, 1923, and the 20th day of November, 1925, the plaintiff is still indebted to the defendant in the principal sum of $300.

The defendant introduced a contract tending to show that the agreement between the defendant and plaintiff constituted a conditional sale, and on account of the defendant reserving possession of the goods until the contract price was paid, plaintiff and defendant did not occupy the relation of lender and borrower of money.

The evidence shows that the defendant advertised its business to be that of loaning money at a low rate of interest, and that it would loan money on anything of value. The defendant company in making loans required that a person securing a loan surrender to it the possession of personal property as a security for such loan.

The instrument introduced in evidence by the defendant is similar in character to that appearing in the case of Sparks v. Robinson, 66 Ark. 460, 51 S. W. 460. The pawnbroker there issued to the borrower the following memorandum in writing:

"This is to certify that if the holder of this certificate presents the same at my office, at 105 East Markham street, not later than 30 days from date, he has the option of purchasing any one article of merchandise in my place of business that is for sale at a price not to exceed ten per cent. above its actual cost; including one sewing machine, $8, if preferred. This offer will be void after 30 days from date. All goods bought and sold for cash."

The court in the above case said:

"The court was clearly justified in concluding that the instrument purporting to be a bill of sale, although absolute on its face, was intended by the parties as nothing more than a security for the money advanced. The right of redemption was reserved to the grantor in the face of the instrument, and the extraneous proof warranted the conclusion that the instrument was intended as a mortgage. Stryker v. Hershy, 38 Ark. 264. In case of a mortgage the mortgagee becomes the absolute owner, where there is a failure to pay, and no redemption

"The instrument itself, and the sale ticket given with it, show that the grantor had the privilege of redeeming in 30 days by paying the principal and not exceeding ten per cent., and the proof shows that at the end of each month the 80 cents, or ten per cent. per month, was collected, and

another sale ticket was issued granting the same privilege. And this might be continued ad infinitum. The law shells the covering, and extracts the kernel. Names amount to nothing when they fail to designate the facts. We are of the opinion that the court was justified in concluding that the papers called 'bill of sale' and 'sale tickets' were nothing more or less than a shift for a usurious loan of money."

In the instant case the evidence clearly shows that both parties treated the contract as a loan of money only. The defendant, from time to time, acknowledged the receipt of interest from plaintiff.

We conclude that, at the time the plaintiff instituted her suit to recover possession of said property, the payments theretofore made to the defendant were just as effectual as if she had made to the defendant one payment of the principal sum of $300 in addition to the interest due thereon.

Certainly in the latter case no one would dispute the right of the plaintiff to recover her property. The fact is, the plaintiff made payments to the defendant in an amount in excess of the principal and interest on said loan. The principal loan amounted to $300. Within a period of two years the plaintiff paid the defendant $385; the interest on said principal for the period of the loan at the highest contractual rate could not in any manner have exceeded $60. Thus we find that the plaintiff paid the defendant an excess of $25 over and above the principal, and in addition thereto the highest legal rate of interest thereon.

The defendant insists that the plaintiff did not pursue the provisions of the statutes relating to the recovery of usurious interest, and, therefore, plaintiff is not entitled to succeed in an action of replevin.

As we understand the facts, the plaintiff is not seeking a judgment against the defendant for usurious interest, but simply claims that the transaction between the plaintiff and defendant constituted a loan of money, and that the plaintiff having returned to the defendant an amount equal to the principal together with all the interest thereon, therefore, the plaintiff, having discharged all claims against said property, is entitled to the return of said property.

No argument, however adroit or specious, can avoid these ultimate and undisputed facts in this case, to wit: First, the contract between the plaintiff and defendant constituted a loan. Second, to secure the payment of said loan, certain property was

delivered to the defendant. Third, the plaintiff had paid to the defendant an amount equal to the principal loan, together with all interest thereon. From these facts the plaintiff is entitled to the return of the property so pledged, and upon refusal of the defendant to deliver to the plaintiff said property, plaintiff is entitled to recover the same by an action in replevin.

We think the trial court erred in withdrawing the case from the jury and entering judgment for the defendant.

The cause is reversed, with directions to proceed in said cause not inconsistent with the views herein expressed.

MASON, V. C. J., and HUNT, RILEY, and HEFNER, JJ , concur.

### On Rehearing.

LESTER, V. C. J. · It has been urged in the original briefs by defendant, as well as on rehearing, that the contract between the plaintiff and defendant constituted an absolute sale of the property involved in this action. The record in this case, as shown on pages 9, 49-59. and 60, clearly shows that the defendant, time and again, executed and delivered to the plaintiff a memorandum in writing acknowledging receipt from the plaintiff of certain interest on account of the loan theretofore made to plaintiff. It appears from the record that the defendant also wrote the plaintiff that it was taking good care of her property. This correspondence between the parties clearly shows that they treated the transaction as a loan.

The name or title adopted by a business concern is usually intended as being descriptive of the character of the business in which it is engaged. The defendant, a corporation, operated and did business under the name of Goldberg's Loan Office, and from all the facts and circumstances in this case it is clearly demonstrated that the particular transaction between the parties to this action was in harmony and accordance with the character of business designated by the corporate name of the defendant.

It is further insisted that, when property is pledged in order to secure a loan, the creditor can look only to the pledged property for the payment of said loan. This contention is not supported by the authorities.

In Jones v. Marshall, 24 Q. B. D. 269. the question arose as to whether or not a pawnbroker might bring an action for a deficit upon a sale of the property pawned. Lord Coleridge, C. J., said:

"I think it is clear that under the contract, read without reference to the act, the pawnbroker would have a right to recover the balance of the loan unsatisfied on the sale of the pledge. It is a contract of pledge, and if the article pawned does not realize the amount lent on it, he may bring an action for the deficit."

In the case of Alexander G. Mauge v. Bernard Heringhi, 26 Cal. 577, the court held:

"A pledgee of chattels has a right at common law, if the pledge is not redeemed within the stipulated time, to sell the property pledged at auction, by giving public notice of the time and place of sale, and if the sale does not satisfy the debt, he may recover the deficiency from the pledgor by an action at law."

In 21 R. C. L. page 685, under the subject of "Pledges," section 47 is as follows:

"The taking of collateral security for the payment of a debt does not, in the absence of a statute or stipulation to the contrary, afford any implication that the creditor is to look to it only or primarily for payment of the debt. The obligation of the debtor to respond in his person and property is the same as if no security had been given, and upon default in payment, the pledgee may elect to sue the pledgor for his debt, without a sale of the security, and may recover judgment in such suit against the pledgor for the amount of the debt, without destroying or in the least affecting his lien on the property so pledged."

The above principle was stated in the case of Rogers v. Ward, a Massachusetts case, reported in 85 Am. Dec. 710, as follows:

"Taking a collateral security for payment of debt affords no implication that creditor is to look to it only or primarily for the payment of the debt. The debtor's obligation to respond in his person and property is the same as if no security has been given."

CLARK. RILEY, HEFNER. CULLISON, SWINDALL. and ANDREWS, JJ., concur. HUNT, J., dissents.

Note.—See under (1) 33 C. J. p. 217, §90. (2) 30 Cyc. p. 1166: 36 Cyc. p. 998. (3) 35 Cyc. p. 661. (4) 30 Cyc. p. 1170.