**BARDON LOAN CO., et al v. BOGGS.**

No. 21327. Opinion Filed Oct. 4, 1932.

Samuel A. Boorstin and G. Ed Warren, for plaintiffs in error.

A. A. Hatch and John T. Harley, for defendant in error.

KORNEGAY, J.   This is a proceeding to reverse the judgment of the court of common pleas of Tulsa county in favor of Bulah J. Boggs, against the Bardon Loan Company, E. V. Velton, R. V. Bardon, and N. T. Gilbert, guardian of R. V. Bardon, incompetent, for $275, with interest at the rate of 6 per cent. from the 13th of December, 1926, for the conversion of a diamond ring and a diamond cluster that were alleged to have been converted by them in the year 1925.

The plaintiff, in order to get some money to help her with the funeral expenses of her husband, borrowed $200 from the Bardon Loan Company, that was being handled by the other defendants, Bardon owning it, but being confined in the asylum at Vinita at the time, the business being carried on by his curator. She agreed to pay $20 a month, and paid $140 for interest over a period of seven months.   Tender was made to the pawn shop, that was being run by the defendants, of $95 in July, 1925, which, added to the $140 already paid, would have been $235, which would have covered the interest and principal with a considerable bonus, had it been accepted.   The defendants, wanting more, refused to accept and retained the property, and, under the doctrine of law as laid down by our court and provided in the statutes, the lien of the defendants upon the pledged property ceased.   Such appears to be the principle of the common law, and such apparently is our statute.

Section 10954, O. S. 1931, is as follows:

"Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay."

In the case of Smith-Wogan Hardware & Imp. Co. v. Bice, 34 Okla. 294, 125 P. 456, the principle of discharge was applied to a chattel mortgage, and in that case an extract from an opinion by Judge Caldwell, from the United States Circuit Court, Mitchell v. Roberts, 17 Fed. 776, is set out and gives the reasons very fully for the discharge on general principles, as follows:

" 'In the case at bar, the question is whether a tender of the debt, after its maturity, extinguishes the lien on personal property pledged to secure its payment. Upon this question there is no conflict in the authorities.  The rule is settled that a tender of the debt, for which the property is pledged as security, extinguishes the lien, and the pledgor may recover the pledge, or its value, in any proper form of action, without keeping the tender good or bringing the money into court, because, like a tender of the mortgage debt on the law day, the tender having once operated to discharge the lien, it is gone forever.  This rule accords with justice and fair dealing.   It would be an exceeding great hardship on the debtor if the creditor had the right to refuse to accept payment of the debt after it was due, and at the same time retain the debtor's property or a lien upon it for the debt.   Advantageous sales would be prevented, collections delayed, and credit lost by the inability of the debtor to free his property.  In many cases debtors would be ruined before they could obtain relief by the slow process of a bill in equity to redeem.   And on a bill to redeem a debtor would have to pay interest and costs down to the decree, unless he had kept the tender good.   Thus the debtor, in order to protect himself against interest and cost, would be deprived of both his property and the use of his money at the pleasure of his creditor, or until the end of a chancery suit could be reached.   On the other hand, a creditor who refuses to receive payment of his debt, when lawfully tendered, cannot complain at the loss of his security for that debt, "because it shall be accounted his own folly that he refused the money when a lawful tender of it was made unto him." ' "

Tested by these rules, most clearly, when the tender was made of all the money borrowed, and a good rate of interest over 10 per cent. being offered, and a refusal to take, there was a discharge of the lien that the parties had upon the property, and a refusal to return or a disposal of it thereafter was a conversion within the meaning of the law, as defined by our own decisions

and by Cooley on Torts. An attempt is made by argument to get around the idea of conversion because of the fact that the man in whose name the parties were doing business was an incompetent and in the asylum.

We do not deem it necessary to discuss in general the authorities cited, as there are a great many of them, but it is clear in this case that if the incompetent was carrying on business through his agents, and as a result of carrying on that business he got into possession of the property of somebody else, and later, his agents, whether he was there or not, in the line of work that was being carried on, converted it, and the other defendants, including his guardian and employees, refused to deliver the property that was gotten in the way indicated, that it would be unjust not to hold all of them for the value of it. On the trial defendants claimed to have sold the property. The lower court found the value to be $275 and fixed the liability at that amount, and complaint is now made as to this being excessive, and that $60 should have been allowed by way of diminishing the damages.

An analysis of the record shows that the attorney for the defendants was not willing that special findings be made. The case was here once before (137 Okla. 248, 278 P. 1115), and it appeared at that time that a suit was had for the conversion of the property, and also for the recovery of twice the amount of the usurious interest paid. On the last trial, finally, the only question that was brought before the court, and actually decided, was the question of the conversion, and the value was fixed at $275, though there was a claim and some evidence that the value of that property was $450. Even on the view of a pawnbroker, the property was worth within $60 of what the court found it to be.

An examination of the facts in this case show it to be similar to the facts in the case of Turney v. Goldberg's Loan Office, 135 Okla. 147, 274 P. 464, and the general principles of the liability of insane persons for torts are expounded in Cooley on Torts, sections 171 to 177, inclusive.

Under the circumstances, it does not appear that an injustice has been done to the plaintiffs in error, and the points raised about the nonliability of the incompetent are not exactly applicable to the facts in this case, as the general rule is that an incompetent is liable for tortious conduct.

We think the case should be affirmed, and that no prejudicial error has been committed as against the present plaintiffs in error. It is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. HEFNER, J., absent.