## MOSELEY v. SMITH.

No. 24915. Sept. 17, 1935.

Forrester Brewster, for plaintiff in error.

S. E. Gidney and Thos. J. Wiley, for defendant in error.

PER CURIAM. This appeal presents error from the district court of Muskogee county, Okla. Plaintiff in error, C. M. Moseley, was defendant in the trial court, and defendant in error, Maggie Smith, was plaintiff in the trial court. The parties will be referred to as plaintiff and defendant, as they appeared in the lower court.

Plaintiff, a teacher in the public schools of the city of Muskogee, in her second amended bill of particulars, sued defendant and others, as will hereinafter be more fully stated, for having exacted of her usury in violation of the statutes of Oklahoma. To be more specific, she alleged that defendant charged and received from her as interest the sum of $89 for the use of $35 for the space of one year,—something more than .250 per cent. She prayed judgment in double the amount of the interest paid and attorney fees, all as provided by statute sections 13683 and 9524, O. S. 1931. The $35 was not all borrowed at one and the same time. On one occasion plaintiff borowed $30, for which she paid $6 per month as interest for the period of four months, and then $12 for its use for the next four months. On another, she borrowed $5, for which she agreed to and paid the sum of $1 per month as interest. The subterfuge adopted in an effort to circumvent the usury statute was to go through the form of purchasing plaintiff's wages, followed by a written assignment thereof. Plaintiff would come in each month, pay $6 on the $30 and $1 on the $5, where-upon, for the purpose of extending the loan the parties would go through the same formalities as were gone through in obtaining the loan of the original sums of money. So long as the interest was promptly paid the assignment was never filed with the employer,—in the instant case, not until the p'aintiff refused to be bled further was the

504

so-called "assignment of wages" filed with the superintendent of schools of the city of Muskogee. Neither in defendant's answer nor in his testimony does he deny the correctness of any of the transactions as alleged by plaintiff or that they were consummated through him. His sole defense is that in their consummation he was acting merely as a hired clerk for someone else, who he said was C. Allen, doing business under the fictitious name of Mont Realty Company, and he prayed, because he was not the principal but merely the clerk or agent of the principal, no judgment should go against him in favor of plaintiff.

In the testimony which he gave on the trial defendant said that at one time, about five years prior, he had owned ·a half interest in the Mont Realty Company, but had disposed of it to his brother-in-law, L. S. Allen, who in turn had sold it to his son, C. Allen, the defendant's nephew. That his brother-in-law first, then his nephew, had hired him to run the business for them, which he had done continuously since he had disposed of his interest more than five years before. However, he had given no notice to the public of any change in ownership of the Mont Realty Company. The Allens, he said, were citizens and residents of Mississippi, and as there were, according to the records, no tangible assets in Oklahoma belonging to the Mont Realty Company, that company not even having or keeping any books or records, a suit for usury or for that matter any other redress, was a waste of time and money.

It is evident that the originators of the scheme thought they were doubly entrenched or fortified against any legal attack. If the "wage purchase" part of the scheme were declared a cloak to cover up usury, as the trial court upon the testimony found that it did, any recovery then would be effectually frustrated by the simple expedient of having the alleged owners and operators of the business all nonresidents and the business itself without any tangible assets within the jurisdiction of any Oklahoma court. As already stated, the trial judges before whom the case was tried, one the judge of the city court of Muskogee and the other the judge of the district court of Muskogee county, held the scheme to be a cloak to cover up the charge of usurious interest. After reading the record we think the conclusion reached by the trial judges was supported by the testimony, and their judgment, in· holding the scheme a mere cloak under which to charge plaintiff usurious interest, correct. Other· courts have condemned the same idea or scheme. People v. J. W. Adams & Co. (Cal.) 295 P. 511; Tennessee Finance Co. v. Thompson, 278 Fed. 597 (and cases cited).

This court, in Turney v. Goldberg's Loan Office, 135 Okla. 147, 274 P. 464, denounced a scheme somewhat analogous. In fact, the defendant in this court does not deny that the lower court's judgment was correct in this respect. In this court the defendant has presented three assignments of error, which he has briefed. The first is that the trial court erred in overruling defendant's demurrer to the plaintiff's petition, the attack of the demurrer being on the sole ground that the plaintiff's second amended bill of particulars did not state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant. In other words, a general demurrer. Second, that the trial court erred in overruling defendant's demurrer to the plaintiff's evidence. Third, that there was no pleading or testimony or legal ground upon which plaintiff is entitled to recover against defendant,. all the transactions upon which plaintiff relies being evidenced by writing, and the defendant not being a party to any of said written instruments, the judgment rendered by the court is, therefore, contrary to law.

Under these assignments of error it will be necessary to examine the second amended bill of particulars, and incidentally the first amended and original bills of particulars to determine if the facts therein alleged sufficiently state a cause of action in favor of plaintiff and against the defendant.

At the outset it must be conceded that plaintiff's various bills of particulars are not models, and especially in their allegations of the relationship of the defendant to the alleged usurious transactions. The original bill of particulars was filed in the city court of the city of Muskogee. In the caption therein the defendant is "C. Allen, doing business as Mont Realty Company." In it is alleged that C. M. Moseley is the manager, representative and agent of said defendant in the city of Muskogee. The prayer is for judgment against C. Allen, doing business as Mont Realty Company. The bill of particulars also charged that C. Allen is a resident of Jackson county, Miss., and a nonresident of Oklahoma. Within a few days after filing the bill of particulars, plaintiff obtained leave from the city ·court to make C. M. Moseley a party defendant, and in the same order obtained leave to file an amended bill of particulars. This she did. In the caption the defendants are "C. Allen, doing business as Mont Realty Company, and C. M.

Moseley, defendants," and her cause of action is directed against the defendants C. Allen, doing business as Mont Realty Company, and C. M. Moseley. In the amended bill of particulars she charges the same state of facts as in the original, in so far as the loan transactions are concerned, and how they were consummated, except that she avers that she entered into the usurious agreements with the **defendants** whereby the said **defendants,** for the corrupt purpose of receiving and taking a greater sum for the loan of money than 10 per cent., agreed to lend the plaintiff the various sums therein set forth. She prayed for judgment against C. Allen, doing business as Mont Realty Company and C. M. Moseley, and each of them.

Thereafter, plaintiff obtained leave to file her second amended bill of particulars. The caption is "Maggie Smith, Plaintiff, v. C. M. Moseley, D. A. Spears and C. Allen, doing business as Mont Realty Company, Defendants," and her cause of action is against the defendants C. M. Moseley, D. A. Spears, and C. Allen, doing business as Mont Realty Company. In this second amended bill of particulars she charges that Spears and Allen are both nonresidents of the state of Oklahoma, and that the defendants conduct a certain loan business, and do now and did at all the times hereinafter mentioned, own, operate, and conduct said loan business under the firm name and style of the Mont Realty Company, within the city of Muskogee, Okla. But the second amended bill of particulars does not stop here. It further alleges:

"That at all said times hereinafter mentioned, the defendant C. M. Moseley was in sole, full and complete charge of said loan business and all the transactions, contracts, loans and payments of loans and usurious interest were had by this plaintiff solely with the said C. M. Moseley. That the said defendants at all said times, **suffered and permitted the said C. M. Moseley to hold himself out as principal and the owner of said loan business and all properties, credits and assets thereof,** and the said C. M. Moseley did in the course of all said transactions had with this plaintiff as hereinafter set forth hold himself out as principal and did fraudulently and with the intent to deceive this plaintiff, failed to disclose that he was acting as agent for the said C. Allen or the said D. A. Spears, either as the sole owners of said business or as partners, and in the transactions this plaintiff had with said defendants this plaintiff had reasons for believing, and did believe by reason of the conduct of said defendants as aforesaid, that she was dealing with C. M. Moseley as principal."

She then charges that although the parties named were partners in the negotiation of the loans and the collection of the usurious interest thereon, that C. M. Moseley acted for them in said matters and that the plaintiff had no knowledge that Spears and Allen were partners with Moseley, "but dealt with the said C. M. Moseley as principal."

The prayer of the second amended bill of particulars prayed judgment against the defendants individually and as a copartnership.

At once it will be seen that this second amended bill of particulars was subject to motions to make more definite and certain, to separately state and number the separate causes of action there alleged, and even by demurrer directed against the bill because of misjoinder of causes of action. However, the defendant filed no motion attacking the second amended bill of particulars and did not demur thereto on the specific ground that there was a misjoinder of causes of action; defendant choosing to rely upon the sole attack that the bill did not state a cause of action in favor of plaintiff and against the defendant. This court has repeatedly held that in filing a general demurrer to a petition the defendant waives the right to attack it by motion. It has also held that a demurrer to a petition, because not stating facts sufficient to constitute a cause of action, can be sustained only where the petition contains a defect so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action, and if the facts stated therein entitle plaintiff to any relief, a demurrer for want of sufficient facts should be overruled. Jackson v. Moore, 79 Okla. 59, 191 P. 590; Ross v. Breene, 88 Okla. 37, 211 P. 417; Thomas v. Morgan, 113 Okla. 212, 240 P. 735, 43 A. L. R. 934; Filtsch v. Bishop, 118 Okla. 272, 247 P. 1110; Criswell, Co. Treas., v. Hart et al., 155 Okla. 159, 8 P. (2d) 70.

It has also been held by this court:

"Where the plaintiff's petition, stripped of surplus and unnecessary verbiage, states a cause of action against the defendant, a general demurrer thereto should be overruled." Scott v. Woods Lbr. Co., 86 Okla. 185, 207 P. 449; Gilbert v. Welchel, 162 Okla. 133, 19 P. (2d) 609.

In Smith v. Gardner, 37 Okla. 183, 131 P. 538, we laid down the rule with respect to what allegations are necessary in a petition to state a cause of action. It was there said:

"Where a petition states facts which show

that the plaintiff has been wronged, shows of what such wrongs consisted, and the amount of damage plaintiff has sustained thereby, and further shows that defendant perpetrated such wrongs and is liable to plaintiff therefor, and prays judgment for the amount of damage sustained by reason of such wrongs, it states a cause of action."

Keeping these various holdings in mind, we proceed to an analysis of plaintiff's second amended bill of particulars. We find that it charges that plaintiff borrowed from the defendant $30 at one time, for which she agreed to and did pay the defendant $6 per month as interest, and that on another occasion she borrowed from the defendant the sum of $5, for which she agreed to and did pay to the defendant $1 per month as interest; that she had paid the principal and interest to the defendant; that all of said transactions had taken place within two years from the time of the institution of the action; which allegations, in effect, alleged that plaintiff had been wronged, of what such wrongs consisted, and the amount of the damage plaintiff sustained thereby, and that the defendant perpetrated such wrongs, and that he was liable to plaintiff therefor, and prayed judgment for the amount of the damage sustained by reason of such wrongs, thus bringing herself within the rule announced by this court in Smith v. Gardner, supra.

All the allegations of the second amended bill of particulars relating to the copartnership composed of Allen, Spears and Moseley must, for the purpose of defendant's demurrer, be eliminated, although such allegations sufficiently charge a cause of action in favor of plaintiff and against Allen, Spears and Moseley, doing business under the name of Mont Realty Company. With these eliminated the allegations of the second amended bill sufficiently charge that the plaintiff dealt with the defendant in his individual capacity, although he was a partner at the time with Allen and Spears. It is evident that plaintiff intended to allege that she dealt with Moseley as principal, but found out after all the usurious transactions had taken place that Moseley was a partner in the copartnership of Allen, Spears and himself, but that this copartnership was never disclosed to her in any of her transactions with the defendant, and that in dealing with the plaintiff, Moseley lead her to believe that he was the principal in the transactions. These allegations are admitted by the demurrer to be true. If Moseley did as charged, he would be liable in his individual capacity, although he might have been at the same time a member of a copartnership composed of Allen, Spears and himself, or merely the agent for Allen and Spears.

In Rowley's Modern Law of Partnership, vol. 1, sec. 486, p. 601, it is said:

"In case the partnership occupies the position of an undisclosed principal, the other party has the right to proceed against either the agent or against the firm as principal."

In support of this statement of the law numerous cases are cited.

In 47 Corpus Juris, subject, "Partnership," section 300, it is said:

"While a partner may act as agent for and bind the firm, he may also deal with third persons in his individual capacity and enter into transactions or contracts which are binding on him individually, and not on the firm."

This court has not heretofore passed upon this identical question; however, it has held that if an agent enters into a contract with the actual intention of binding his principal only, if his wording of the same, or the circumstances of the case, are such as to bind himself. he will be personally liable thereon notwithstanding the fact that he may have incidentally disclosed the name of his principal. Cohee v. Turner & Wiggins, 37 Okla. 778, 132 P. 1082; Gilbert v. Welchel, 162 Okla. 133, 19 P. (2d) 609.

The latter case cites the prior decisions of this court upon that subject. The principle announced in these cases necessarily leads to the same conclusion announced in Rowley's Modern Law of Partnership and Corpus Juris, supra.

The pleadings do not present a case where the plaintiff is suing a copartnership alone, but seeking and recovering a personal judgment against one of the partners individually. If such were the case, under the statutes of this state and the decisions construing them, we would be compelled to hold that such could not be done. Spangenberg v. Galena Perforating Co., 92 Okla. 185, 218 P. 804; Sayre Commission Co. v. Keen, 26 Okla. 794, 110 P. 775; Heaten v. Shaeffer, 34 Okla. 631, 126 P. 797; Holmes v. Alexander, 52 Okla. 122, 152 P. 819; Brown et al. v. First Nat. Bk. of Temple, 35 Okla. 726, 130 P. 140.

We think it clear that plaintiff's second amended bill of particulars sufficiently charges defendant with being an undisclosed principal, bringing her squarely within the rule as laid down by Rowley and Corpus Juris, supra. It follows, therefore, that the defendant's general demurrer was properly overruled.

We come next to the second spec'fication of error, which challenges the ruling of the lower court in overruling defendant's demurrer to the plaintiff's evidence. The test to be applied to a demurrer to the evidence is that all the facts which the evidence in the s'ightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat that evidence as withdrawn which is most favorable to the demurrant. Rose v. Woldert Grocery Co., 54 Okla. 566, 154 P. 531, and numerous other cases.

In reading the record we find plaintiff testified that on every occasion, either in borrowing the money or paying the interest thereon, or repaying the loan, she dealt exclusively with the defendant; that defendant on each occasion required her to sign an instrument in three separate and distinct p'aces; that she was never permitted to have possession of these instruments at any time; that as soon as she signed them defendant took charge of them; that at the time she signed the instruments, the name of the person to whom the money was made payable did not appear therein; that defendant never informed her that he was acting merely as the agent in any of these transactions; that he charged her $6 a month for the use of $30 and $1 a month for the use of $5; that the total amount of interest paid for the $35 for one year was $89; that whenever she paid off a note to the defendant, he would tear off her signature, however, retaining the instrument himself; that she continued to pay interest from February 1931, to November 19, 1931, at which latter date she refused to pay further, whereupon defendant sent a statement to the superintendent of schools at Muskogee, advising him that plaintiff's wages as a teacher in the Muskogee schools had been assigned by her to defendant. That after a conference with the superintendent, it was decided that she should take up the entire indebtedness. Accordingly, she made out a cashier's check covering the entire amount and sent it to the defendant. She further testified that on one occasion defendant called her, stating that he wanted h's money and was going to get it. That at no time was anything said by defendant that the money be'onged to C. Allen, D. A. Spears, or the Mont Realty Company.

Viewing this testimony in the light of the test we must adopt in passing upon a demurrer to the evidence, and without going into a detailed discussion thereof we think it suffi.ient to meet the defendant's demurrer thereto, and that the trial court committed no error in overruling defendant's demurrer to the evidence.

In the third and last assignment of error defendant contends:

"There is no pleading or testimony or legal ground upon which plaintiff is entitled to recover against defendant, all transactions upon which plaintiff relies being evidenced by writing, and the defendant not being a party to any of said written instruments the judgment rendered by the court is therefore contrary to law."

Because his name did not appear in any of the written instruments evidencing the transactions had with the plaintiff, defendant now says that the judgment of the lower court was contrary to law. We think this contention is also untenable. Plaintiff testified that in her transactions with the defendant she was required to sign a written instrument in three distinct places, but at the time of writing her name therein the name of the lender did not appear. Defendant confronted her with one of the written instruments which plaintiff acknowledged she signed, in which the name of C. Allen appeared as the other party to the transaction, but plaintiff postively denied that the name of C. Allen appeared in this instrument at the time she signed it. From her testimony the trial court could have very reasonably concluded that the defendant placed the name of C. Allen in this instrument after it had been signed by the plaintiff and returned by her to the defendant. The court might as easily have concluded that the defendant inserted the name of C. Allen in the instrument after it had been signed by the plaintiff and delivered by her to the defendant in order to avail himself of the contention he is now making in this court under his third assignment of error.

It goes without saying that if the transactions were in truth and in fact entered into between the plaintiff and defendant as principals, the fact that the defendant inserted someone else's name in the instrument without the knowledge or consent of the plaintiff, would not bind the plaintiff, nor would it relieve the defendant of personal liability or change in any way his legal responsibility toward the plaintiff. Scanlan v. Grimmer (Minn.) 70 Am. St. Rep. 326. When it is remembered that C. Allen, a nephew of the defendant was at the time of the institution of this suit a resident of Mississippi, that he had purchased his interest in the

Mont Realty Company from his father, L. S. Allen, a brother-in-law of the defendant, and that this brother-in-law had purchased his interest in the Mont Realty Company from the defendant, and that D. A. Spears, who the defendant claimed owned a one-half interest in the Mont Realty Company, was also a nonresident, and that according to the defendant's testimony there were no assets in Oklahoma belonging to the defendants C. Allen and D. A. Spears, the lower court might well have concluded that the defendant had framed this setup for the express purpose of relieving himself of any personal liability, and that he placed the name of C. Allen in these written instruments after they had been returned to him by the plaintiff, in order to protect himself against such a lawsuit as plaintiff instituted against him in the instant case. The trial judge has better opportunity than this court to judge of the credibility of witnesses; after seeing and hearing them he evidently concluded that the defendant was in fact the real party engaged in the nefarious business of exacting unconscionable interest from the plaintiff, and we do not feel disposed to disturb his conclusion on this feature of the case, or, for that matter, any part of the judgment which he rendered against the defendant.

The judgment is amply supported by the evidence, and should be and is affirmed.

The Supreme Court acknowledges the aid of Attorneys M. A. Breckinridge, Donald L. Brown, and Charles R. Bostick in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Breckinridge and approved by Mr. Brown and Mr. Bostick, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.