M. A. NEFF, Olva E. Pratt and Blanche E. Pratt, husband and wife, and the Prospect Company, a Corporation, Plaintiffs in Error,

v.

Geo. C. JONES, Defendant in Error.

No. 36818.

Supreme Court of Oklahoma.
Sept. 13, 1955.

As Amended Sept. 27, 1955.

Rehearing Denied Oct. 18, 1955.

Eugene S. Wells, Oklahoma City, and Don Welch, Madill, for plaintiffs in error.

Goins & Smith, Ardmore, for defendant in error.

BLACKBIRD, Justice.

This is an appeal from a judgment sustaining a general demurrer to the petition that plaintiffs in error filed, as plaintiffs, in the district court, and dismissing their action against defendant in error, as defendant. All parties will hereinafter be referred to by their designations there.

In their petition, plaintiffs prayed for cancellation of two separate oil and gas leases, each with 5–year primary terms, covering the major portion of a quarter-section of land, executed and delivered by Verdy and A. J. Lacy, husband and wife, on May 30, 1924. In the prayer of said petition plaintiffs also prayed, among other things, "for such other and further general legal and equitable relief as they may be entitled to * * *." They incorporated the allegations set forth as entitling them to such relief in two separate causes of action, the first of which dealt with the lease covering the larger tract, the second

dealing with the lease that covered only 20 acres, or the smaller tract. On the plat of said quarter-section shown below, the latter or smaller lease which covers the East Half of the Southeast Quarter of said quarter-section is shown heavily outlined along the plat's eastern edge, while the acreage as to which cancellation of the larger lease was sought, the one referred to in plaintiffs' first alleged cause of action, is shown as covering all of the rest·of the plat·except the shaded portions.

S. E. 1/4, SEC. 24, T-5-S, R-5-E.

Legend:

>ọ- Plugged wells.

⊕ Producing wells.

The various locations of the wells alleged to have been drilled since the leases were executed are also indicated by dots and circles on the plat; but, according to plaintiffs' petition, none of them has been drilled since the defendant's wife, from whom he inherited the leases, became their owner in August, 1935. Also, according to the allegations of said petition, only one of them was drilled after January 15, 1929; and, for "several years" prior to 1951, only the 8 wells indicated on the plat by dots have been "operated and produced"; all of the others, the ones indicated by circles, having been previously plugged.

In said petition, plaintiffs not only alleged that defendant had abandoned the leases as to the acreage involved herein, but also alleged that the defendant's wife and predecessor in title, as well as the defendant to whom the leases were distributed by decree entered November 17, 1952, in the probate proceedings covering said deceased wife's estate, "have breached the implied covenants of diligent development" contained in said leases, in that they had wholly failed and refused to develop and operate them diligently.

The petition further alleged that on August 20, 1954 (or more than 60 days before the petition was filed on October 27th, of said year) plaintiffs had served written notice upon the defendant setting forth their claims with reference to said leases, demanding that defendant "proceed immediately to develop" same in a diligent manner, and notifying him that upon his failure to do so promptly, suit would be brought for cancellation of said leases.

It was further shown by the allegations of said petition that more than 30 days after the service upon defendant of the described notice, the defendant "well knowing that plaintiffs were preparing to commence this action * * * and * * * that leasing activity in the vicinity of said land had recently started, moved a truckload of oil onto" said leases, opened up the 6 wells that had been plugged and pumped the load oil into them, making a "limited effort" to place them "back on production, the exact nature and extent of such effort being to plaintiffs unknown; * * *". Plain-

tiffs further alleged that such efforts "came too late", that they "did not operate to revive" any of defendant's rights that had theretofore been lost, and that they were insufficient to comply with plaintiffs' demands.

In one of the propositions set forth in plaintiffs' brief to demonstrate error in the trial court's judgment, they maintain that on the basis of the allegations in their petition, which for the purpose of defendant's demurrer must be accepted as true, they were entitled to cancellation of the leases at least as to a portion of the land covered thereby, on the theory of defendant's breach of the leases' implied covenants of diligent development. Defendant says that if plaintiffs were entitled to any relief at all, it would be cancellation of the leases on the theory of breach of their implied covenants to diligently develop the leased premises, but, in their Proposition IV, his counsel argues that in all such cases, the prudent operator rule is applicable and, under said rule, it was incumbent upon plaintiffs to plead facts showing such things as the cost of drilling and equipping additional wells and the production that would probably be obtained therefrom, and thus make it appear that such drilling would be profitable. The only authorities cited for said asserted requirement as to pleading is Texas Consolidated Oils v. Vann, 208 Okl. 673, 258 P.2d 679, 686, in which it was held, as in the earlier case of Magnolia Petroleum Co. v. St. Louis-San Francisco Ry. Co., 194 Okl. 435, 152 P.2d 367, that the burden rests upon the plaintiff in such a case " 'to plead and prove the facts establishing breach of covenant.' " The partially quoted statement is a sound one, but, as will be noted, it does not say that the facts contended for by defendant are among those which plaintiffs must plead in properly alleging breaches of the covenants under discussion. In fact the law is to the contrary in cases where, as here, an unreasonable delay in further development is asserted as ground for cancellation. See Trawick v. Castleberry, Okl., 275 P.2d 292, and the cases therein cited. This Court's rule relieving plaintiffs from such burden of proof in

such cases is based upon sound principles of equity first announced in Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934. Some of the considerations from which it evolved are shown by the following statement from our opinion in that case incorporated in the recent opinion in Sand Springs Home v. Clemens, Okl., 276 P.2d 262, 263, as follows:

" 'To permit the lessee to hold the lease for an unreasonable length of time for merely speculative purposes, is to allow him to protect his own interest and to disregard the interest of the lessor. If conditions do not indicate to him that further development will be profitable, it is but fair that, after a reasonable time has expired, he surrender the undeveloped portions of the lease and allow the lessor to procure development by others or assume the burden of showing why in equity and good conscience the undeveloped portion should not be cancelled so that the owner may, if possible, get it developed by others.' "

What constitutes an unreasonable or unconscionable period of waiting to commence a well or wells on the undeveloped portions of a lease of course varies with the circumstances, and ordinarily is a question of fact to be determined from the evidence in each particular case. See Shell Oil Co. v. Howell, 208 Okl. 598, 258 P.2d 661, and Shell Oil Co. v. Lee, Okl., 258 P.2d 666. A particular period asserted to be unreasonable by a lessor, or his assignee, may be shown by the evidence to be reasonable, under the circumstances, but, until the evidence is introduced, it is usually impossible to determine the matter. Without such evidence, including the testimony of those versed in oilfield practices and necessities, and competent to say what a reasonably prudent operator would do, a determination by the Court as to whether the delay alleged was reasonable or unreasonable is likely to be purely arbitrary and without any sound basis. Here, it is a matter which cannot be determined solely on the basis of the facts alleged in plaintiffs' petition, and, to the extent, if any, that the trial court, by its ruling on defend-

ant's demurrer, purported to determine such question, it erred.

Some of the foregoing is equally applicable to defendant's allegations concerning the insufficiency of the notice plaintiffs served upon him previous to commencing their present action. He argues, under his Proposition II, that in all such notices, the lessor must ask the lessee to commence operation within a "stated" or a "reasonable" time; and, since plaintiff's notice in this case called upon defendant to proceed "immediately", it was insufficient as a condition precedent to the bringing of this action, citing Wapa Oil & Development Co. v. McBride, 84 Okl. 184, 201 P. 984; Doss Oil Royalty Co. v. Texas Co., supra, and other authorities. He says that since plaintiffs' notice to him specified no proper period of time for the commencement of the further development therein demanded of him before suit would be commenced, and did not specify exactly what it meant by the word "development", he was "at a loss to know how to comply with * * * (such) demands." He says that the only way he could have complied with a demand couched in such terms would have been to commence operations of "some" nature the same day the notice was served upon him. We think defendant's argument is specious. By the authorities he cites, a lessee always has a reasonable time after service of the notice within which to start operations unless there are special circumstances, such as an agreement for a different or specified time. The body of the opinion in the Wapa Oil & Development Company case, as well as the other authorities defendant cites, shows this. The word "certain" in the third paragraph of the syllabus of the cited case is therefore not to be given a strict interpretation, but as properly construed in its context, includes a "reasonable" time. The test here is whether plaintiffs actually *afforded* defendant a reasonable time to commence further development before filing suit asking for cancellation of the leases. Whether the time that elapsed was a "reasonable" time, under the circumstances, depends upon the facts pertinent thereto; and plaintiffs' petition did not allege enough

of these that the trial court could properly determine the matter solely therefrom. As hereinbefore shown, what may be a reasonable time in one area, and under one group of circumstances, may be unreasonable as applied to another and different area and/or situation.

Nor can defendant's claim that he didn't know what to do in order to comply with plaintiffs' assertedly unspecific demand for further development be well-taken merely on the basis of the facts alleged in plaintiffs' petition, failing, as they did, to show whether opening up the wells therein alleged to have been previously abandoned, and inserting so-called "load oil" therein, was sufficient to constitute the "development" contemplated in the implied covenant involved herein. We therefore conclude that in view of the foregoing, the trial court's sustaining of defendant's demurrer to plaintiffs' petition could not have been validly based on the claimed insufficiency of the notice described by said petition and its attached exhibit. What we have said above concerning the question as to the sufficiency of defendant's operations on the leases to constitute the "development" contemplated in the leases' implied covenants, is also an answer to defendant's Proposition III, wherein he asserts that after he had conducted these operations pursuant to plaintiffs' notice, it was then incumbent upon them to issue a new and further notice before commencing this action. If what defendant did in such operations was insufficient for that purpose, then we see no reason why any new notice would be necessary.

In one of his other arguments, defendant apparently assumes that the only relief plaintiffs prayed for was a cancellation of the leases in toto, or as to *all* of the unreleased acreage included therein. We do not so view the petition. While it is true that the prayer thereof sets forth a request, in general terms, that the leases be cancelled, it also contains a prayer, as hereinbefore noted, "for such other and further general and equitable relief as they may be entitled to * * *". We think that under the principles governing courts' rulings upon general demurrers to peti-

tions in causes of equitable cognizance, plaintiffs' petition, though not a model of pleading and not as definite and certain as might be desired, was sufficient to withstand defendant's demurrer. See Moseley v. Smith, 173 Okl. 503, 49 P.2d 775, and the quotations appearing in Kasner v. Reynolds, Okl., 268 P.2d 864, 867. We therefore hold that this argument of the defendant furnishes no valid basis for sustaining the trial court's judgment.

As we regard plaintiffs' petition as a sufficient statement of a cause of action for forfeiture or cancellation of the oil and gas leases involved on account of breach of their implied covenants for further development, it is unnecessary to deal with defendant's Proposition I, which is predicated on the assumption that plaintiffs' alleged cause of action was based upon the theory of defendant's abandonment of said leases. As none of defendant's arguments demonstrate that the trial court's judgment was proper, and no valid basis for such judgment is apparent, it is hereby reversed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY and JACKSON, JJ., concur.