C. R. SULLIVAN and Betty K. Sullivan, husband and wife, Plaintiffs in Error,

v.

SECURITIES INVESTMENT COMPANY OF SAINT LOUIS, a corporation, Defendant in Error.

No. 44037.

Supreme Court of Oklahoma.

March 21, 1972.

Rehearing Denied April 17, 1973.

Greer & Greer, Tulsa, for plaintiffs in error.

Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for defendant in error.

DAVISON, Vice Chief Justice.

This is an action in the nature of an action for debt to recover twice the amount of the entire usurious interest paid by plaintiffs in error, C. R. Sullivan and his wife Betty K. Sullivan, plaintiffs in the trial court, to defendant in error, Securities Investment Company of St. Louis, a defendant in the trial court. Other defendants in the trial court were Howard E. Turrell and Noble C. Hood, Trustee in Bankruptcy for C. R. Sullivan, neither of whom are parties to this appeal. Trial court designations will be used.

The jury returned a unanimous verdict for the defendant that plaintiffs take nothing and that defendant recover its costs. Upon overruling plaintiffs' motion for a judgment notwithstanding the verdict and their alternative motion for a new trial, the trial court rendered judgment for defendant and plaintiffs, upon excepting to the court's rulings, gave notice of intention to appeal to this court.

The record on appeal is a statement of the case prepared pursuant to our rule 1.23 —Rules on Perfecting a Civil Appeal—effective January 1, 1970, and consists of a stipulation of facts with exhibits and a statement of questions to be presented on appeal. The exhibits consist of copies of certain documents—a promissory note dated March 17, 1966, for $80,000.00 payable to defendant bearing interest at 12½% executed for C. R. Sullivan Building Company, Inc. by C. R. Sullivan, President, and attested by Betty Sullivan, Secretary, who as individuals, are the plaintiffs in this action; a mortgage between the same parties dated March 17, 1966, covering real property in Altus; minutes of a special meeting of the Board of Directors of C. R. Sullivan Building Company, Inc., authorizing the borrowing of $80,000.00 from defendant by C. R. Sullivan Building Company, Inc.; a balance sheet of C. R. Sullivan Building Company, Inc. as of March 18, 1966; Federal Income Tax Returns executed by C. R. Sullivan Building Company, Inc. for the calendar years 1964, 1965, 1966 and 1967; a real estate mortgage by plaintiffs to defendant covering real property in Ponca City, Oklahoma, to secure payment of the $80,000.00 note; personal guarantee, executed by plaintiffs, of the payment of obligations of C. R. Sullivan Building Company, Inc.; First Amended Petition; Answer and Amended Answer of defendant; the trial court's instructions to the jury; the Journal Entry of Judgment.

The Statement of the case also contains a statement, approved by the trial judge, of questions to be presented on appeal.

"1. Is Title 18 O.S.A., Section 1.26, which reads in words and phrases as follows unconstitutional:

'No corporation shall, after this Act, becomes effective, plead, directly, or by counter claim, set-off, or otherwise, a defense of usury to any action brought against it to recover damages on, or to enforce performance or payment of, or any other remedy on, any debt, mortgage, bond, bill of exchange, note or other obligation or liability, executed, incurred, or effected by such corporation.'

"2. Are the plaintiffs estopped to deny the existence of C. R. Sullivan Building Company, Inc., a corporation by executing the above mentioned documents in the corporate name and/or by failing to inform defendants of the cancellation of the corporate charter.

"3. Did the trial court err in overruling plaintiffs' Motion for Summary Judgment.

"4. Did the trial court err in overruling plaintiff's Motion for Judgment Non Obstante Veredicto.

"5. Did the trial court err in overruling plaintiff's Motion for New Trial."

The pleadings adequately embrace the statement of the case. Accordingly it will be unnessary to delineate the pleadings. The statement of the case properly prepared and certified by the trial court follows in part:

"On March 17, 1966, and at all material times mentioned herein, plaintiffs, C. R. Sullivan and Betty K. Sullivan, were residents of Tulsa, Oklahoma, and were engaged in the building business in Tulsa, Oklahoma.

"On March 17, 1966, at all material times mentioned herein, the defendant, Securities Investment Company of Saint Louis, was a foreign corporation, organized under the laws of the State of Delaware, with its principal place of business in St. Louis, Missouri, and who was engaged in the business of making real estate loans and principally second mortgage real estate loans.

"On March 17, 1966, and at all material times mentioned herein, the defendant, Howard E. Turrell, was engaged as a loan broker, in Tulsa, Oklahoma, and was engaged in the business of arranging loans between lenders and borrowers.

"Some time prior to March 17, 1966, plaintiff C. R. Sullivan made inquiry of the defendant Howard E. Turrell, a long time friend, and former business partner during 1963 and 1964 in business known as Midwest Investors of America, about Turrel's securing a loan. Turrell informed him that he knew that Securities Investment Company of Saint Louis did make such loans as he had arranged loans through it in the past and offered to arrange a loan through such lender. Turrell put together a 'presentation' of the loan for Securities consideration and agreed that he would act as appraiser in the loan transaction as a favor to Sullivan without cost.

"On March 17, 1966, the defendant, Securities Investment Company of Saint Louis, did loan to C. R. Sullivan Build-

ing Company, Inc., a corporation, the sum of $80,000.00, secured by a promissory note in that amount, bearing interest at the rate of 12½% percent and which was secured by two real estate mortgages.

"One second real estate mortgage was executed as mortgagor C. R. Sullivan Building Company, Inc., and signed by the plaintiffs as President and Secretary, respectively, and covered a motel in Altus, Oklahoma. This motel was the only piece of real estate which was owned by C. R. Sullivan Building Company, Inc.

"Plaintiffs also executed a second real estate mortgage on a 64-unit apartment building located in Ponca City, Oklahoma, which apartment building was held in the individual names of C. R. Sullivan and Betty K. Sullivan.

"C. R. Sullivan Building Company, Inc., had been incorporated in 1961, under the laws of the State of Oklahoma. On April 28, 1965, its charter was cancelled for non-payment of the annual franchise tax.

\*    \*    \*    \*    \*    \*

"The check for the loan proceeds was made out to C. R. Sullivan Building Company, Inc., as payee, and was endorsed by C. R. Sullivan as President, and cashed by him, and disbursal was made through the Morris Plan of Tulsa, Oklahoma, an affiliate of Securities Investment Company of Saint Louis, both companies being wholly owned by the same holding corporation.

\*    \*    \*    \*    \*    \*

"Plaintiff C. R. Sullivan testified that he sought this loan in an individual capacity and that the defendants required that it be executed in the corporate name. The defendants, Securities Investment Company of Saint Louis and Howard E. Turrell, denied this.

"C. R. Sullivan testified that he told Howard E. Turrell and an employee of Securities Investment Company of Saint Louis at the time of the making of the loan that C. R. Sullivan Building Compa-

ny, Inc., was a dead corporation. All the employees of Securities Investment Company of Saint Louis and Howard E. Turrell denied this.

"Securities Investment Company of Saint Louis did charge and collect the sum of $15,383.29 interest on the $80,000.00 borrowed. The loan was prepaid and only in existence for a period of 15 months.

"After the repayment of the loan with the interest as aforesaid, plaintiffs filed suit in the District Court, alleging that they were entitled to double the amount of usurious interest paid, to wit: $30,766.58, plus $5,000.00 attorney fees, and alleging that Howard E. Turrell had at all material times therein acted as the agent, servant and employee of the defendant Securities Investment Company of Saint Louis. It was further alleged that the loan in question was in fact, made to plaintiffs as individuals, though made in corporate form.

"The defendant Securities Investment Company of Saint Louis, in its Answer, denied that the loan was made to individuals, but alleged that it was, in fact, made to C. R. Sullivan Building Company, Inc., a corporation, and further pleaded that plaintiffs could not maintain their action because of Title 18 O.S.A., Section 1.26, which forbids a corporation to assert the defense of usury. It further pleaded that plaintiffs were estopped to maintain their action because they had represented themselves as a corporation to such lender."

The statement of the case as certified by the trial judge makes clear the issues to be presented on appeal. Although there are 5 enumerated issues, the answers to issues Nos. 1 and 2 determine the answers to issues Nos. 3, 4 and 5.

Issue No. 1 involves the validity under the Oklahoma Constitution of a section of the Business Corporation Act, 18 O.S.1961, § 1.26, set forth above under issue No. 1.

■ We assume in deciding this issue that plaintiffs are estopped to deny that C. R. Sullivan Building Company, Inc., existed as a corporation at the time the $80,000.00 loan was presumptively made to it, notwithstanding its charter was canceled April 28, 1965, for non-payment of the annual franchise tax. In this posture the loan bearing an interest charge of 12½ per annum, must be tentatively treated as having been made to a corporation who cannot in this action assert usury as a defense, which defendant, in effect and on this assumption, is doing in this action. But plaintiffs say § 1.26, which in effect permits the charge of usurious interest rates to corporations violates Article 14, §§ 2 and 3, and Article 5, § 46, of the Constitution of Oklahoma.

Section 46 of Article 5 provides:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law: * * * Fixing the rate of interest * * *"

Section 1.26 of the Business Corporation Act does not "fix the rate of interest," it merely permits, as hereinafter pointed out, a usurious interest charge to Business Corporations. As such it is neither a "local or special law" but is an incident in a comprehensive legislative effort to control and regulate the activities of business corporations. The classification thus effected is constitutionally permissible. The classification was necessary and the Business Corporation Act operates uniformly on all business corporations. Grable v. Childers, State Auditor, 176 Okl. 360, 56 P.2d 537; Bishop v. City of Tulsa, 21 Okl.Cr. 457, 209 P. 228, 27 A.L.R. 1008; Wm. S. & John H. Thomas v. Union Trust Co., 251 Mich. 279, 231 N.W. 619 [1].

■ Article 14, § 3, assesses a penalty of twice the amount of the interest paid if the payment is in excess of the maximum contractual interest rate (10%) prescribed in Article 14, § 2. But Article 14, § 3, contains this terminal proviso: "Provided, However, That *this* section may be subject to such changes as the Legislature may

prescribe." This proviso gave Article 14, § 3, no more standing in a constitutional sense than the standing of a statutory enactment. Midland Savings and Loan Co. v. Touhy, 69 Okl. 270, 170 P. 244. In Midland, involving a charge of usury, one question was whether the plaintiff complaining of usury, must allege and prove that the lender knowingly charged a greater rate than that permitted by law. The legislature in enacting laws pertaining to usury omitted the expression "When knowingly done" as it appears in Article 14, § 3, of the Oklahoma Constitution. We held that such allegation and proof was not necessary because the legislature rendered it unnecessary by omitting "when knowingly done" in the enactment of 15 O.S.1961, § 267. This the legislature had the power to do by reason of the terminal proviso in Article 14, § 3, of the Oklahoma Constitution.

But the terminal proviso of § 3 does not, as defendant contends, grant to the legislature the power to increase the maximum contractual interest rate permitted by self executing Section 2 of Article 14; Ex parte McNaught, 23 Okl. 285, 100 P. 27; Turney v. Goldberg's Loan Office, 135 Okl. 147, 274 P. 464. In Turney a pawnbroker charged an interest rate above the maximum permitted by § 2. The pawnbroker's charge was presumptively authorized by § 1951 C.O.S.1921, which permitted the pawnbroker to make an interest charge at any rate above that allowed by law provided the pawnbroker had a license to make such a charge from a municipality empowered to grant such licenses. After the borrower had repaid the loan with interest at 10%, the pawnbroker refused to return the pledged property to the borrower, Turney, who thereafter instituted a replevin action. One defense was that § 1951, C.O.S.1921, permitted the excessive interest charge. To this defense we said:

"The Constitution of this state clearly inhibits the Legislature from authorizing any one to charge a greater rate of interest than 10 per cent. Article 14, § 2, of the Constitution, provided:

"'The legal rate of interest shall not exceed six per centum per annum, in the absence of any contract as to the rate of interest, and, by contract, parties may agree upon any rate not to exceed ten per centum per annum, and, until reduced by the Legislature, said rates of six and ten per centum shall be, respectively, the legal and the maximum contract rates of interest.'

"Article 5, § 46, par. R., also prohibits the Legislature from passing any local or special law fixing the rate of interest."

Although defendant disputes the application of Turney insofar as Article 5, § 46 of the Oklahoma Constitution is concerned, defendant does not dispute or even mention Turney's application of Article 14, § 2, to render unconstitutional our statute that permitted licensed pawnbrokers to exceed the maximum contractual interest rate prescribed in Article 14, § 2.

That the necessary operation and effect of a statute like § 1.26 of our Business Corporation Act is to permit a usurious charge to all business corporations is clear. Holland v. Gross, Fla., 89 So.2d 255, 63 A. L.R.2d 920. The Supreme Court of Florida was applying § 612.62, F.S.A., which reads: "No corporation shall interpose the defense of usury in any action in any court in this state." In rejecting the defense of usury the court said: "Such a provision means that the defense may not be interposed because the provision itself operates to remove loans to corporations from the scope of laws against usury." In Florida no constitutional provision existed to inhibit the necessary operation and effect of such a provision. "The statutory provision when applicable is held to mean any position or attitude in an action in which a corporation seeks to avoid its own contract by showing that it is usurious, and it is not confined to the case of a corporation filing such defense when made a party defendant to an action." Matlack Properties, Inc. v.

Citizens & Southern National Bank, 120 Fla. 77, 162 So. 148, 150.

Article 14, § 2, which is self executing says:

"The legal rate of interest shall not exceed six per centum per annum, in the absence of any contract as to the rate of interest, and by contract, parties may agree upon any rate not to exceed ten per centum per annum, *and, until reduced by the Legislature,* said rates of six and ten per centum shall be respectively the legal and the maximum contract rates of interest." (emphasis supplied)

The only room for legislative departure is by reduction of the prescribed maximum rates.

But defendant says there was a great need for enactments like § 1.26 of our Business Corporation Act, citing an extended excerpt from Carozza v. Federal Finance & Credit Co., 149 Md. 223, 131 A. 332, 342, and points out that against attacks made against their validity upon various grounds such laws have generally been held to be constitutional. 55 Am.Jur., Usury, Section 104, page 395.

We shall examine the authorative bases for these statements.

In Carozza the Court of Appeals of Maryland in sustaining the validity of a statute like our § 1.26 was not faced with a constitutional provision like our Article 14, § 2, which prohibited legislation permitting usurious charges. Carozza involved only an attack upon the ground that the legislation was class legislation and denied the equal protection of the laws. Article 3, § 57 of the Maryland Constitution provided only: "The legal rate of interest shall be six per cent per annum unless otherwise provided by the General Assembly." Our Article 14, § 2, has no such provision and limits legislation to a reduction in the legal rate.

Defendant refers to an excerpt from a note (63 A.L.R.2d 929) saying: "Statutes depriving corporations of the right to interpose the defense of usury in any action have generally been held constitutional." The quotation is to the same effect as is the quotation, supra, from American Jurisprudence, Usury. The first case cited in support of the note in 63 A.L.R.2d 929, is Wm. S. & John Thomas, supra. In this case no constitutional provision like our Article 14, § 2 was involved, which clearly the legislature is without power to change. We have heretofore cited this case to support our conclusion that Section 1.26 of the Business Corporation Act does not violate Article 5, § 46. Carozza, supra is next cited in the note at 63 A.L.R.2d 929. The legislative freedom of the Maryland General Assembly is dealing with usury is also noted. The case next cited is Shriver v. Druid Realty Company, 149 Md. 385, 131 A. 815, which is subject to the same disposition as Carozza, supra. Next comes Tennant v. Joerns, 329 Ill. 34, 160 N.E. 160. The constitutional provision there involved was Art. 4, § 13, of the Illinois Constitution: "The General Assembly shall pass no local or special law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter of judicial determination."

Next on the list is 759 Riverside Ave., Inc. v. Marvin, 109 Fla. 473, 147 So. 848. Here it is urged that the Florida statute denying to corporations the right to interpose the defense of usury violated the Fourteenth Amendment to the U. S. Constitution and the Florida Declaration of Rights. Nothing akin to our Article 14, § 2, was involved.

Finally in the usury case of Curtis v. Leavitt (1857), 15 N.Y. 9, Justice Comstock's broadside, at page 85, that such an act denies to corporations the defense of usury is far, far away from any reference to a constitutional provision like our Article 14, § 2.

The recent publication of Volume 45, Am.Jur.2d under "Interest and Usury" contains the same subject matter that was contained in Am.Jur. under usury. Vol. 45

contains, also, the expression that statutes like § 1.26 under our Business Corporation Act have generally been held to be constitutional under various attacks. The cases cited to support this statement in note 17 have been examined. No cited case involves a constitutional provision like our Article 14, § 2.

■ On the basis of the foregoing we hold that 18 O.S.1961, § 1.26 violated Article 14, § 2 of the Constitution of Oklahoma until the amendment of § 2 was adopted at election held September 17, 1968, giving the Legislature of Oklahoma, with the approval of the Governor of Oklahoma, full power to permit or prohibit usurious practices. In the case before us, the loan was made and the usurious interest paid prior to September 17, 1968.

In reaching this result, we have not been unmindful of the many cases cited to us that articulate rules in a variety of applications that support the heavy presumption of constitutionality that legislative acts are held to enjoy. We have contemplated the dire results that defendant says will be generated by a holding adverse to it. In view of all such considerations we have found no reason to depart from our consistent support of the bars against usury so long as they remained, or to reverse Turney, supra.

It thus becomes unnecessary to decide question No. 2 to be presented on appeal. On the basis of the foregoing, the answer to questions Nos. 3, 4 and 5 is that the trial court erred.

Accordingly the judgment of the trial court is reversed and judgment is rendered for plaintiff in the sum of $30,766.58 with interest at 10% per annum from this date and costs and attorney's fees. Upon appropriate hearing the trial court will fix attorney's fee for plaintiffs' attorneys.

All Justices concur.

## ORDER ON REHEARING

On consideration of the Recommendation that Petition for Rehearing be denied the following occurred:

DAVISON, C. J., WILLIAMS, V. C. J., and HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.

IRWIN, BERRY and BARNES, JJ., dissent.