**FRICK–REID SUPPLY CORPORATION et al. v. MEERS et ux.**

No. 3852.

Court of Civil Appeals of Texas. Amarillo.
June 29, 1932.

HALL, C. J.

J. F. Meers and wife executed an oil and gas lease on April 3, 1929, to Albert McCollum, one of the defendants in this suit. Thereafter McCollum transferred and assigned to various others parties named as defendants certain portions of the leasehold. This suit is filed against McCollum and the numerous sublessees or assignees under the original lease for the purpose of canceling the lease and the interests of the numerous defendants.

The petition sets out the provisions of the lease, and it is alleged that, after its execution, the defendant McCollum and one Kercheval, acting for all of the owners of the leased premises, commenced a well in July, 1929, and continued drilling to a depth of 3,200 feet, which was reached in November, 1929; that at that time defendants decided to "shoot" the well in an effort to increase the production of oil, but in doing so they conducted the operation so carelessly and negligently that some of the pipe in the hole was shattered and torn loose; that the well choked and caved so that, instead of increasing the flow, the well became practically lost, since which time the productivity of the well is limited to gas; that, after working a short time on the same without success, defendants ceased their efforts to obtain production, and discontinued all work in connection therewith, and about the 1st of January, 1930, the said well and leased premises were completely abandoned by defendants and all of their employees; that since said time the well has been left untended and deserted, and all of the defendants moved off of the premises and all of their employees left with the intention of abandoning the property and relinquishing any intention of ever developing and operating the leasehold for the production of oil or gas or to in any way further carry out the purposes for which the leasehold was granted, and by reason thereof the estate terminated and expired; that no cash or other consideration was received by plaintiffs for the execution of said lease, and the only consideration for its execution was the exploration, development, and operation for the purpose of obtaining oil and gas and the payment of royalties to plaintiffs in accordance with the stipulations of the lease; that it was understood by plaintiffs and the lessee that the inducement for the execution of said lease was the expectation of immediate development and production, to the end that such royalties would be paid to plaintiffs, and pursuant to such intention there was written into said lease the specific requirement that operations for the drilling of a well in search of oil and gas should be commenced within ninety days from the date of the lease and continued thereafter with diligence in keeping with the purposes and intent that the land should be developed immediately to the end that same should produce revenue for the benefit of the parties concerned; that, when the said lease owners, defendants herein, abandoned said lease and relinquished any purpose to develop and operate same for oil and gas production, they thereupon wholly abandoned the essential object and purpose of said lease and destroyed the whole consideration therefor.

Plaintiffs further alleged that the sense and meaning of the lease and the actual intent and purposes thereof was that, upon drilling operations being started and oil and gas being found in any well, thereafter the continuance of the lease would be contingent upon such production; that defendants nor either of them have ever produced, sold, or marketed the potential production from said well, and by reason of such failure the lease has terminated in virtue of its own limitations.

Plaintiffs further alleged that defendant J. R. Phillips has been appointed receiver and pretended to have the leasehold in his charge and custody, but that the lease had expired and terminated because of the matters above alleged, long prior to the time said receiver was appointed, and for that reason the receiver is a trespasser upon the premises. The prayer is that judgment be entered declaring the termination of the lease, decreeing it to be null and void, and canceling all pretended rights or claims of the various defendants in and to the premises, and that the plaintiffs have judgment for the title and possession of the land, free of defendants' claims.

The defendants answered by general demurrer, certain special exceptions, general denial, and affirmative pleadings that the leased premises had not been abandoned.

The cause proceeded to trial before a jury, and, in answer to special issues submitted by the court, the jury found that each and all of the defendants had abandoned the premises. Pursuant to such finding, judgment was entered by the court, canceling the lease and terminating defendants' interests.

Certain of the defendants gave notice of

appeal, and, having failed to prosecute the appeal, the judgment has been affirmed on certificate as to them. Other defendants have brought the case to this court by writ of error proceedings.

■ The first proposition urged is that the court erred in overruling defendants' motion to quash the citation by publication because the affidavit of the attorney upon which the citation is based states only that the residences of the defendants were unknown to him, and does not state that their residences were unknown to plaintiffs in the case, or that diligent search and inquiry has been made to learn where each resides.

Appellees' attorney made the affidavit for the citation, and recites that "all defendants in said suit are persons whose residence is unknown to this affiant."

R. S. art. 2039, provides: "Where a party to a suit, his agent or attorney, shall make oath when the suit is instituted, or at any time during its progress, that any party defendant therein is a non-resident of the State, or that he is absent from the State, or that he is a transient person, or that his residence is unknown to affiant, the clerk shall issue a citation for such defendant addressed to the sheriff or any constable of the county in which such suit is pending," etc.

It will be observed that the statute authorizes the issuance of process when the party's attorney makes oath that any party defendant (1) is a nonresident of the state; or (2) is absent from the state; or (3) is a transient person; or (4) that his residence is unknown to affiant. The affidavit which the appellants attack is made under the last provision of the statute, and, since it complies literally with the requirements of the statute, we think it is sufficient. The judgment rendered is one in rem, and in such suits service by publication upon a defendant whose residence is shown by the affidavit to be unknown has been held sufficient (Pool v. Lamon [Tex. Civ. App.] 28 S. W. 363), and has also been held sufficient even in a divorce case (Griffin v. Griffin, 54 Tex. Civ. App. 619, 117 S. W. 910; 21 R. C. L. 1289, § 33; 50 C. J. 515, § 149). We find the authorities cited by appellants to be inapplicable, as they relate to defendants coming within the provisions of other statutes or other provisions of the article quoted above.

■■ As said in 21 R. C. L. § 33, supra: "On the principle that a state may provide for the adjudication of all adversary rights of persons in property within its borders, the legislature has the power to authorize proceedings by action against unknown claimants and bind them by constructive notice thereof and such suits are not in conflict with the state or federal constitutions as depriving persons of their property without due process of law.".

■ It may be admitted that, if the truth of the affidavit made by appellees' counsel had been controverted and the issue tried and upon a finding by the court or jury returned to the effect that the fact stated in the affidavit was untrue, the service should have been held insufficient; but, in the absence of such an attack in the trial court, the presumption obtains here that the affidavit is true, and we must hold the service to be sufficient.

■ By the second proposition the appellants contend that the court erred in refusing to direct a verdict in their favor because the uncontradicted evidence showed that the original lessee, McCollum, caused a well to be drilled upon the premises within the time limited by the lease and obtained production thereon, and that McCollum did not in any wise abandon the lease.

This proposition is duplicitous. Suffice it to say that the issue of abandonment was properly submitted to the jury, and the court could not have, under the testimony, directed a verdict for either party.

■ By proposition No. 3 it is contended that the court erred in submitting to the jury special issue No. 1, because it is vague, indefinite, and uncertain in setting out the names of the defendants, but left it to the jury to speculate which defendants might have abandoned the lease. The further objection is made to the issue that it is multifarious and duplicitous.

Special issue No. 1 is as follows: "Do you find from a preponderance of the evidence that the oil and gas lease in question, dated April 3, 1929, from Meers and wife to McCollum was heretofore and prior to Aug. 11, 1930, abandoned by Albert McCollum and R. D. Kercheval and the other defendants to whom McCollum or McCollum and Kercheval transferred part interest in the lease?"

The jury answered this issue in the affirmative. It is not multifarious nor do we think it is subject to the objection that it is indefinite and uncertain in failing to name each of the numerous sublessees. The pleadings show that McCollum and Kercheval, for themselves and all other owners in the leasehold, undertook to drill the well. There is neither pleading nor evidence that any of the owners other than McCollum and Kercheval ever exercised any authority with reference to development or nondevelopment or made any attempt to comply with the obligations resting upon them under the lease. If, as a matter of fact, any one of such numerous sublessees or assignees by word or conduct showed an intention not to abandon or to be bound by the acts of McCollum and Kercheval with reference thereto, it was a matter of defense, and the duty rested upon such sublessee or assignee, by pleading and proof, to assert the fact and request an issue with ref-

erence thereto. Under the case as made by the pleadings and the evidence, we think the issue is sufficiently specific.

■ But, aside from this, plaintiffs in error here did not make the objections to special issue No. 1 that are urged by appellants. Exceptions to the court's charge were taken by Frick-Reid Supply Corporation, Hinderliter Tool Company, Atlas Supply Company, American Tank Company, Kercheval and wife, and J. R. Phillips. Judgment has heretofore been affirmed on certificate as to all of these defendants except the American Tank Company. That company never so much as filed an answer in the trial court, and, even though we are in error in holding that special issue No. 1 is correct, since it has not been challenged here by any one authorized to do so, the proposition is overruled.

■■ By proposition No. 4 it is contended that the judgment is erroneous because it is rendered without regard to paragraph No. 8 of the lease.

This paragraph is as follows: "This lease shall never be forfeited or cancelled for failure by lessee to perform in whole or in part any implied obligations nor while oil or gas is being produced in paying quantities for any cause whatever unless there shall first be a final judicial ascertainment that such obligations or causes exist and that lessee is in default. Upon such final determination, lessee is hereby given a reasonable time thereafter to comply with such obligation or at lessee's election to surrender the lease with the option of reserving under the terms of this lease each producing well and ten acres surrounding it to be selected by lessee. Lessee shall not be liable in damages for any breach of any implied obligation."

We think this stipulation is void. If its terms were observed, Meers and wife would be required to file a suit in the district court for the purpose of adjudicating the questions as to whether there had been a breach of any implied obligation and whether oil or gas was being produced in paying quantities. By the terms of the stipulation, that would end the suit, even though the facts should be determined against the lessees. The court would be precluded from rendering judgment upon such findings. Except in certain instances prescribed by statute, courts do not try cases by piecemeal. The methods of practice and procedure in the courts of Texas are specifically prescribed and set out by the statutes and the rules of the Supreme Court.

R. S. art. 2209, provides that, where a verdict is rendered or the judge has found the facts, the court shall render judgment thereon, unless the verdict is set aside or a new trial is granted.

Article 2211 provides that the judgments of the courts shall conform to the pleadings, the nature of the case proved, and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled, either in law or in equity, and further provides that only one final judgment shall be rendered in any cause, except where it is otherwise specially provided by law.

■■ Observance by the court of the terms of this stipulation would require a trial in which only the facts named in the stipulation could be judicially ascertained. Upon the determination of such facts, the lessee, according to the stipulation, is given a reasonable time thereafter to comply with his obligations or surrender the lease, reserving any producing well and ten acres surrounding it. This would require at least two trials and two final judgments. It would require, contrary to the provisions of article 2209 a postponement of the rendition and entry of the judgment upon the facts ascertained, subject to the option and caprice of the lessee. Agreements relating to proceedings in civil cases and involving or providing for anything inconsistent with the full and impartial course of justice therein are illegal. 2 Elliott on Contracts, 719. While both common-law and statutory arbitrations are favored by the courts, and questions of fact may be conclusively settled in that way, the parties cannot by original contract or otherwise convert the trial and appellate courts into mere boards of arbitration.

It is said in 2 Page on Contracts, § 719: "The law does not allow parties to make contracts whereby they bargain away in advance the right to resort to the courts for protection of their rights and determination of their liabilities."

The same author, in section 726, says: "The extent to which parties may go in modifying the course of procedure in civil actions by private contract may be indicated by saying that they can waive merely private rights and can confer jurisdiction of the person but they cannot confer jurisdiction of the subject-matter nor can they modify rules imposed for the public good or the benefit of the court nor can they require a court to give remedies other than given by the system of jurisprudence which the court administers. * * * The parties cannot fix remedies in advance."

■ Parties will not be permitted in the formation of their contracts to interfere with or retard the course of justice or to oust the court's jurisdiction and powers as prescribed by statute, neither can they change the orderly administration of justice in accordance with the laws and rules of the jurisdiction in which the suit is pending. Sovereign Camp of Woodmen of the World v. Robinson (Tex. Civ. App.) 187 S. W. 215.

■ As said in Municipal Gas Co. v. Lone Star Gas Co. (Tex. Civ. App.) 259 S. W. 685, it

may be stated as elementary that the parties to a contract may agree and contract with reference to the remedy to be invoked in case of a breach of its terms and conditions by either party, provided the remedy thus made available against the offending party does not contravene the law of the land or violate the public policy of the state.

By counter proposition the appellees insist that, the estate granted by the lease in question having been declared terminated and ended by reason of an abandonment of the purposes for which the premises were granted, the foregoing provision in the lease has no effect or relevancy, since the interest of the lessee and his assigns terminated by reason of an intentional relinquishment and abandonment of the premises by the lessee and his assigns.

As held in Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, the lessee in virtue of the lease had only a determinable fee which when abandoned ipso facto terminated the estate without the necessity of a re-entry or any sort of proceeding on the part of the lessor.

We approve the suggestion of the appellees that the stipulation referred to relates wholly to the matter of forfeiture and not to the loss of the lessee's right under express limitations of the grant or to the matter of abandonment. The distinction between forfeiture and determination of an estate under the limitations of the lease vesting it is discussed in Summers on Oil & Gas, § 162, in which the author says:

"Forfeiture is the exercise of an expressly reserved power by the lessor to terminate the lease for breach of the lessee's express or implied duties. Abandonment, on the other hand, denotes a power in the lessee, by his acts or failure to act, to establish a legal intention on his part to relinquish his interest thereby creating a power in the lessor, upon proper proof of this intention, to enforce a cancellation of the lease in equity. * * * They are different, however, in that the power to terminate the lease by forfeiture is expressly created by the lease, while the power of the lessor to terminate the lease by abandonment is created by the words or conduct of the lessee. Termination by abandonment is voluntary on the part of the lessee in the sense that he may control his own conduct; that is, his failure to reasonably test and develop the land, from which the lessor's power to terminate had its inception. Forfeiture and abandonment may appear to be alike, in that the enforcement in equity of the lessor's power to terminate by either process necessarily involves the proof of breach of the lessee's express or implied covenants to test or develop. In forfeiture proof of the breach alone is sufficient, but in abandonment proof of such breach is merely evidence which may or may not establish the lessee's intention to relinquish, which in turn creates the lessor's power to terminate."

As said in Marnett Oil & Gas Co. v. Munsey et al. (Tex. Civ. App.) 232 S. W. 867, 872: "The distinction between the intentional relinquishment of a legal right and the loss of that right by a forfeiture must be kept in mind. Abandonment is purely a matter of intention. Time is of no importance as an element to be considered except as indicative of intention. Forfeiture is the involuntary loss of a right or contract of conveyance."

In Stephenson v. Calliham et al. (Tex. Civ. App.) 289 S. W. 158, 159, it is said:

"Under this state of facts we hold that the provision for giving notice of an intention of forfeiture, and allowing 60 days to the lessee in which to 'do and perform the necessary thing to prevent forfeiture' does not apply. The lease period had already fully expired through the cessation of drilling. The only act which could possibly have kept the lease in force after its stipulated period was continued drilling operations, and, those operations having once wholly ceased, the life of the lease could not be thereafter restored, for there was no provision or permission for a resumption of those operations when once discontinued. No purpose could be served by the lessor giving the lessee notice of an intended cancellation, for there was nothing the lessee could do to 'prevent' such cancellation. He could not continue an operation which had in fact been discontinued for a period of 6 weeks, and he could not revive the lease under any of its provisions by resuming operations. By his own act of destroying the last spark of life in the lease, he cut himself off from the only means of preserving it, and is now without a remedy.

"We therefore hold, particularly in deference to the rules that oil and gas leases shall be strictly construed in favor of the lessor, and that, contrary to the general rule, forfeitures of such leases are favored, that by the terms of this lease it was fully and irrevocably terminated upon cessation of drilling operations, and that appellees properly brought and may maintain this action to cancel, without first giving notice to appellants of the intention to cancel. In pursuance of this conclusion, we overrule appellants' first proposition."

In response to the first special issue, the jury found that the lease had been abandoned prior to the time of the appointment of the receiver. If this finding is supported by the testimony, it is unnecessary to discuss the effect of the appointment of the receiver and his subsequent conduct, because the appointment is upon the face of the record a nullity.

The parties have quoted at length in the briefs the testimony bearing upon the issue of abandonment. It would render this opinion unnecessarily long to quote this testimony in full. Suffice it to say that in our opinion the finding is fully sustained.

We find no reversible error, and the judgment is affirmed.