MAGNOLIA PETROLEUM CO. v. ST. LOUIS-S. F. R. CO. et al.

No. 31094.   Oct. 17, 1944.

*152 P. 2d 367.*

Walace Hawkins, of Dallas, Tex., and

Robert W. Richards, of Oklahoma City, for plaintiff in error.

E. G. Nahler of St. Louis, Mo., and Cruce, Satterfield & Grigsby, of Oklahoma City, for defendants in error.

HURST, J. This is a suit to cancel an oil and gas lease insofar as it covers a tract consisting of 1.47 acres. From a judgment in favor of the plaintiffs, St. Louis-San Francisco Railway Company and its trustees, canceling the lease as to the 1.47 acres on the ground of abandonment, the defendant, Magnolia Petroleum Company, owner of the oil and gas lease thereon, has appealed.

In 1916, a departmental oil and gas lease in favor of F. M. Bailey as lessee and covering 160 acres of land near the town of Cement was executed by the owners, who were restricted Indians, and was approved by the Secretary of the Interior. The lease was for a term of ten years and as much longer as oil and gas shall be found in paying quantities. The lease contains a clause making all its terms binding upon "the heirs, executors, administrators, successors, and lawful assigns of the parties hereto." It gives the lessee the "exclusive right to prospect for, extract, pipe, store and remove oil and natural gas" from the leased premises. Paragraph No. 7 of the lease provides that "the lessee may surrender all the undeveloped portion of the leased premises by paying the officer in charge all amounts then due and the further sum of one dollar, which surrender shall not affect the terms hereof as to each producing well and ten acres of said premises as nearly in square form as possible next contiguous to and surrounding each of said wells."

In February, 1922, the lease insofar as it covered a certain 20-acre tract of the leased premises was assigned to Magnolia Petroleum Company. In November, 1922, the Magnolia Petroleum Company drilled a producing oil well in the approximate center of the east 10 acres of the 20-acre tract. The 10-acre tract so drilled on is in the form of a

square. The well has ever since produced oil, and at the time of the trial it was producing about five barrels of oil per day. There is no contention that it is not producing in paying quantities. No other well has been drilled on the 20-acre tract. The railway tracks of the plaintiff company run across the eastern part of the east 10-acre tract.

In 1929, the plaintiff railway company acquired by purchase from the lessors the fee-simple title to the 1.47-acre tract in controversy, along with other adjacent land, but subject to said oil and gas lease. The 1.47-acre tract is an irregular shaped tract and is in the southeast corner of the east 10-acre tract on which the producing well is located. It is east of the railway tracks and the producing well is west of the tracks. In 1930, the railway company, under its power of eminent domain, condemned the surface of said 1.47-acre tract and paid the Magnolia Petroleum Company, one of the defendants in the condemnation suit, $10 as condemnation money. The Magnolia Petroleum Company did not contest the condemnation proceeding.

In March, 1940, an offset well to the south of the 1.47-acre tract was being drilled, and the railway company wrote a letter to the Magnolia Petroleum Company demanding that it drill a well on the 1.47-acre tract, and stating that if such demand was not complied with within a reasonable time it would declare a forfeiture of the lease insofar as it covers the 1.47-acre tract. The demand was refused by a letter dated August 29, 1940, on the ground that the well near the southeast corner of the east 10-acre tract, which had then been completed, was not a commercial or producing well and the showing made would not justify the drilling of another well on the east 10-acre tract, but the Magnolia Petroleum Company stated in the letter that "whenever conditions are such that a reasonably prudent operator would continue development upon our leased premises, you may be assured that we will proceed with addi-tional development." In January, 1941, the present suit was filed.

The case was tried upon a written agreed statement of facts, some oral stipulations, and the oral testimony of Earl C. Flesher, a witness for the plaintiff. The defendant introduced no testimony. In addition to the facts above stated, the record discloses that wells offsetting the producing well on the east 10-acre tract have been drilled to the south, southeast, east, and north, some to deeper sands. Some of these offset wells were dry and others were small producers. Flesher testified that from an oil operating standpoint the chances for production would not warrant the drilling of a well on the 1.47-acre tract. The stipulation and agreed statement are silent on this point.

The defendant contends that the east 10-acre tract constitutes one drilling location or unit. It points to the provision of the lease found in paragraph 7, quoted above, and several of our prior decisions where ten or more acres were reserved around a producing oil well when the undeveloped portion of the lease was canceled. It also urges that the covenant to drill on the one unit is indivisible, and that under the prudent operator rule it is not, under the record, required to drill another well on the east 10-acre tract to the sand from which the present well is producing or to other sands. It argues that abandonment by it of the 1.47-acre tract is not shown.

The plaintiff urges that paragraph 7 of the lease does not have the effect of making each 10 acres one drilling unit for all purposes, but only for the purpose of surrender under certain circumstances. It urges that abandonment of the lease as to the 1.47-acre tract is shown by the fact that the Magnolia Petroleum Company made default in the condemnation suit, and by its failure for many years to drill on the 1.47-acre tract or to pay it royalty. It relies upon cases where it was clear that there were distinct drilling locations or units not developed. It assumes that

the east 10-acre tract constitutes two drilling units. It cites no authority holding that a lease will be canceled as to a part only of a drilling location or unit on the theory of abandonment or breach of covenant, and we know of none. It repeatedly complains of the fact that oil is being drained from its 1.47-acre tract by the defendant and that it is receiving no royalty therefrom.

It will thus be seen that this case presents several questions. What rights did the railway company acquire by purchase of the fee-simple title? What rights did it acquire by the condemnation proceedings? What are the rights of the Magnolia Petroleum Company as assignee of a part of the original lease as against the railway company? What duties does it owe to the railway company?

Since the cause was tried below, this court has had occasion to re-examine our prior decisions having to do with the right of lessors to secure cancellation of the undeveloped portions of oil and gas leases on the theory of abandonment or breach of covenant to fully develop, and some of the rules that had been previously stated have been modified and restated. See Doss Oil Royalty Co. v. Texas Co., 192 Okla. 359, 137 P. 2d 934; Ferguson v. Gulf Oil Corporation, 192 Okla. 355, 137 P. 2d 940; Magnolia Petroleum Co. v. Rockheld, 192 Okla. 628, 138 P. 2d 809; Skelly Oil Co. v. Boles, 193 Okla. 308, 142 P. 2d 969; McKenna v. Nichlos, 193 Okla. 526, 145 P. 2d 957.

We need not determine whether the 7th paragraph should be construed to make 10 acres a drilling unit for all purposes. The size of a drilling unit is variable and, in the absence of an agreement, depends upon several factors such as the porosity of the sand, the bottom hole pressure, depth of the sand, cost of drilling and equipping wells, the productiveness of the sand, and perhaps others.

The plaintiff introduced no evidence tending to prove that the well in the center of the east 10-acre tract would not drain the oil from the entire 10 acres. In fact, it complains that its oil is being so drained and that it is receiving no royalty therefrom. The plaintiff does not point out why the 1.47-acre tract should be treated as a drilling unit. In this respect, the present case is unlike the cases cited by the parties where it is clear that there were locations or drilling units on which no well had been drilled.

It is clear that the acquisition of the fee-simple title to the 1.47-acre tract by the railway company, by purchase, has not altered the rights and obligations of the parties with reference to the further development of the leased premises. There being no provision in the lease to the contrary, the duty of the Magnolia Petroleum Company to drill other wells is no different or greater now than it would be if the original lessors still owned the entire 20 acres on which it owns the lease. Mere subdivision of the leased premises does not increase the lessee's burden so as to impose upon it duties not assumed by it under the lease. The east 10-acre tract was not converted into two drilling units merely by the sale of the 1.47-acre tract. The railway company occupies no better position with reference to demanding further development or cancellation than the original lessors would occupy if they had sold none of the leased premises. Galt v. Metscher, 103 Okla. 271, 229 P. 522, and cases cited; 24 Am. Jur. 601, § 102; Summers, Oil and Gas, Perm. Ed., § 513. It took title burdened with the lease, and in contemplation of law, with knowledge of the principles of law just stated.

The question as to whether the railway company is entitled to a portion of the royalty from the well on the east 10-acre tract, which was drilled *before* it acquired its interest, is not before us, since the owners of the portion on which the well is located are not parties to this cause, and the railway company does not sue for part of the royalties. The principles just stated obtain regardless of whether the railway company is or **is not entitled to a share of such royal**-ties.

It is also clear that the plaintiff could not, by the condemnation proceeding, and without the consent of the Magnolia Petroleum Company, acquire the fee-simple title to the 1.47-acre tract so as to extinguish the right of the defendant to remove the oil and gas therefrom. Okla. Const., art. 2, sec. 24. In fact, the plaintiff concedes that all it thereby acquired was the exclusive right to use the surface thereof. And while the Magnolia Petroleum Company could not interfere with plaintiff's use of the surface (Kansas City Southern Ry. Co. v. Marietta Oil Corp., 102 Fed. 2d 603; Midland Valley Ry. Co. v. Jarvis, 29 F. 2d 539, 61 A.L.R. 1064), it still retained the exclusive right to remove the oil and gas therefrom by any lawful means, such as through the existing well or other wells it might lawfully drill on the 20-acre tract or other adjacent land. Under the terms of the lease, above, and its assignment, it has the exclusive right to drill wells for oil or gas purposes on the 20-acre tract, unless it has, by its acts or failure to act, lost such right by abandonment or breach of covenant. And since its right is exclusive, it necessarily follows that the railway company has no right to drill wells for oil and gas purposes on the 1.47-acre tract or to remove oil or gas therefrom.

Has the Magnolia Petroleum Company lost such right because of breach of covenant? The plaintiff did not allege breach of covenant. The burden of proof rested upon it to prove breach of covenant, if it claimed breach of covenant. Wilcox v. Ryndak, 174 Okla. 24, 49 P. 2d 733; 24 Am. Jur. 657. It offered no proof tending to establish the factors necessary to prove breach of covenant, as stated, and outlined in Ramsey Petroleum Corp. v. Davis, 184 Okla. 155, 85 P. 2d 427, and Doss Oil Royalty Co. v. Texas Co., above. It does not now contend that breach of covenant is shown. The judgment appealed from cannot, therefore, be sustained on the theory of breach of covenant.

Does the record show abandonment?

We think not. As pointed out in Doss Oil Royalty Co. v. Texas Co., above, a concurrence of an intention to abandon with the act of physical relinquishment is necessary to accomplish an abandonment. The plaintiff did not sustain the burden of proving these elements, as was its duty. 24 Am. Jur. 657. The defendant has a producing oil well near the center of the east 10-acre tract. It is in possession of the lease on the 20-acre tract. It has done nothing toward physically relinquishing possession of any part of the 20 acres. At the time the condemnation proceedings were being prosecuted, it was producing oil from the well drilled near the center of the east 10-acre tract. It probably assumed that this well would drain the oil from under the 1.47-acre tract, that the plaintiff railway company had the right to condemn the surface, and that the rights acquired by the railway company in the condemnation proceeding would not interfere with its right to continue to produce oil from the existing well or to drill other wells west of the railway tracks on the 20-acre tract or on other adjacent land, if necessary, in such a manner as to drain the oil and gas from the 1.47-acre tract. The plaintiff does not point out wherein the defendant could have prevented it from condemning the surface or how it could have gained any rights by contesting the condemnation proceeding. The defendant's failure to contest the condemnation proceeding does not tend to prove an intention to abandon its oil and gas rights in the 1.47-acre tract.

We conclude that the plaintiff has not sustained its burden of establishing facts which entitle it to cancellation of the oil and gas lease insofar as it covers the 1.47 tract on any tenable theory.

Reversed for further proceedings not inconsistent with the views herein expressed.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur.